**CANDLER v. ROSE.**

No. 7752.

Circuit Court of Appeals, Fifth Circuit.

Dec. 4, 1935.

M. E. Kilpatrick and Harold Hirsch, both of Atlanta, Ga., and John E. McClure, of Washington, D. C., for appellant.

Helen R. Carloss and Sewall Key, Sp. Assts. to Atty. Gen., and Frank J. Wideman, Asst. Atty. Gen., and M. Neil Andrews, Asst. U. S. Atty., of Atlanta, Ga., for appellee.

Before HUTCHESON and WALKER, Circuit Judges, and HOLMES, District Judge.

HUTCHESON, Circuit Judge.

Rose v. Dobbs (C.C.A.) 36 F.(2d) 464[1] was, as this one is, a suit by a stockholder of the Coca-Cola Company to recover back income taxes overpaid for the year 1917. Candler, as the holder of 20 shares in that year received, as Dobbs as the holder of 23 shares did, his proportionate part of the distributions the company made, under authority of the resolution of January 18, 1917.[2] In the Dobbs Case the District Judge found: (1) That "on the close of the books of the company, as of December 31, 1916, it appeared that there were in fact no profits made during the year 1916 which had not already been paid out, but

---

[1] Reported in the District Court as Dobbs v. Rose, 27 F.(2d) 168, 169.

[2] "That from the net profits of the corporation made during the year 1916 there be declared to the stockholders of record of this date the sum of $3,000 per share. Said dividends so declared to be paid in six installments in equal amounts on the 18th day of January, March, May, July, September and November of the year 1917.

"Be it resolved further, that the balance of said net annual profits for the year 1916 be passed to the account of undivided profits."

that there was a surplus of $816,034.23 which had been accumulated prior to March, 1913." (2) (a) That the net income for 1917 was $2,681,870.84 without taking into account the deduction for company federal taxes. (b) That though federal taxes of $1,483,413.70 were paid for 1917, only $1,166,960.04 was due, and in 1922 the difference $316,453.66 was refunded, leaving a net available for the payment of dividend of $1,514,910.80.

In the Dobbs Case the District Judge held (1) that each of the installment distributions should be deemed paid first from 1917 earnings then available, and then from the surplus accumulated before March 1913, and (2) that the computation of 1917 earnings available should be on the basis of the federal taxes actually paid for that year, without regard to the subsequent refund. In this court both of these holdings were rejected. We held that the resolution had the effect of distributing the old surplus which was not subject to income and excess profits tax. That this was sufficient to pay the first three installments, and part of that of July without resorting to the 1917 earnings, and that Dobbs was therefore liable for taxes on part of the July, and all of the September and November installments. We held, too, that in determining the 1917 earnings available for dividends the corporation taxes actually due as determined by the refund and not those paid, should be deducted.

Appellant insisted below, as he does here, that the Dobbs Case is controlling. Appellee denied below, and denies here, that it is. Pointing out that in that case he had not specifically claimed the December 31, 1916, surplus as 1916 earnings, but had rather assumed that it was pre 1913, he insists that the holding there could not be binding here. For here, whether that surplus was pre or post 1913 was not assumed, but was made the question for decision.

The District Judge took appellee's view. He held that the evidence in this case differentiated it from Dobbs Case. He declined to hold, as we had, that the dividend payments out of the December 31, 1916, surplus were tax free, because that was a pre March 1, 1913, surplus. He found the evidence of prior distributions sufficient to show that by December 31, 1916, all of the pre March 1, 1913, surplus had been paid out, and that the December 31, 1916, surplus out of which dividends were in part paid in 1917, was the undistributed balance of the 1916 earnings.

■■■ We have carefully examined the record in this case and in Dobbs. We find nothing in it effectively differentiating this case from that. It is true that the government, through appellee, does take a position here with regard to the effect of the facts different from that it took in Dobbs Case. There appellee's position was in accord with that consistently theretofore maintained by the government, that the distributions the company had made had taken profits and surplus in the order of their accumulation, the most recent earnings first. That position was taken, however, and the stipulation in that case made, with every fact known to appellee which he now knows. In Dobbs Case as in this, the books and records of the company, the resolutions authorizing the distributions, and the facts as to how they were made were all known and available to appellee.[3] What is different here, and what alone is different, is appellee's inconsistent position taken in this suit for the first time, that dividends will be deemed first paid out of accumulations, rather than out of the most recent earnings. Under these circumstances, though appellant was not a party to that suit, and the judgment in it is therefore not legally conclusive against appellee in this, the rule applied there should be applied here, unless it clearly appears from the record, that it was there wrongfully applied. A short statement of the

[3] In that case it was found:
"On the close of the books of the company as of December 31, 1916, it appeared that there were in fact no profits made during the year 1916 which had not already been paid out, but that there was a surplus of $816,034.23 which had been accumulated prior to March, 1913." Record No. 5476, p. 49, Rose v. Dobbs.

In his brief in that case Rose, appellant, says of this finding:
"It is predicated not upon the entries

made in the books but upon the interpretation placed upon those entries and adjustments made in those entries by a certified public accountant, who was not employed in the plaintiff's business and had not made the entries which he interpreted and adjusted, but who was produced as a witness on behalf of plaintiff. The interpretation is directly in conflict with the facts shown by the books." Brief p. 14.

undisputed facts and figures the record shows will, we think, make plain that the surplus as of December 31, 1916, was not, as the District Judge here found, the balance of 1916 earnings, but was, as was found in the Dobbs Case, the undistributed balance of pre 1913 surplus, and that the judgment should have been here, as it was there, that distribution of this surplus was not taxable.

From the facts stipulated and found it appears that as of March 1, 1913, the company had a surplus of $9,772,998.71. From March 1, 1913, to December 31, 1913, $1,215,202.67 was earned. In 1914, $2,381,122.34; in 1915, $2,412,249.34 was earned. From January 1, 1916, to January 21, 1916, $132,566.72 was earned; and for the balance of 1916 $2,171,569.12, making a total of earnings after March 1, 1913, of $9,012,710.17. During that period and under various resolutions, $17,967,674.60, all of the earnings, except the $816,034.23 in question here, were distributed to stockholders. To pay each of the cash distributions prior to that authorized on January 18, 1917, the one in question here, it is conceded that there were sufficient current or recent earnings on hand and that payment was made from these without resorting to accumulated surplus. Typical of the resolutions authorizing these distributions is that of January 21, 1915, providing that the dividend "be paid from the net profits of the corporation made during the year 1914." It was recognized by all and found by the trial court that all dividends "were paid

out of the most recent earnings unless specific instructions for a different disposition were given by proper corporate authority." It was insisted by appellee and found by the court below that the resolutions for the distribution of property, first notes,[4] later real estate[5] which, with the distributions of cash took all of the company's earnings on hand except $816,034.23 the December 31, 1916, balance, were in effect "specific instructions for a different disposition." That these two resolutions it is claimed provided for distributions of earnings in the inverse order, of their receipt that is, taking the oldest earnings first until exhaustion, and then the excess out of recent earnings.

Appellant urged below and insists here that not a word of these resolutions directs payment of the dividends they authorize out of any particular funds. He insists, on the authority of the Dobbs Case and of Helvering v. Canfield, 291 U.S. 163, 54 S.Ct. 368, 78 L.Ed. 706, Mason v. Routzahn, 275 U.S. 175, 48 S.Ct. 50, 72 L.Ed. 223, Farrell v. Commissioner of Internal Revenue, 30 B.T.A. 627, Appeal of A. B. Nickey & Sons, 3 B.T.A. 173, and Law Opinion 932, 1 C.B. 16, 17, that as drawn they required the distributions to be made and these were made, by taking the most recent earnings first, resorting to the oldest earnings only when all later earnings had been exhausted.

The District Judge's findings and the briefs of appellee and appellant contain

---

4 On January 21, 1915, this resolution was adopted. Under it first five million dollars and later one and a half million dollars of notes were distributed.

"Whereas, This Company is and has been for several years past the owner of certain real estate, notes, accounts and other assets, which said assets represent investments of capital accumulated during a long period of years, and

"Whereas, said assets are not of a nature to be necessary to the present business of this Company,

"Now, Therefore, Be it Resolved; That said assets be divided in kind between the stockholders of this company pro rata according to amount of stock held by each stockholder, said division or distribution to be in no sense as a dividend but as a partial distribution of capital.

"Resolved, Further, That a committee composed of Asa G. Candler, Sr., Wm. Candler and W. O. Mashburn be appointed and authorized to make such division or

distribution on such basis as may to them seem fair and equitable and report in writing, and that when said division is so made, that the officers of the company be, and they are hereby authorized to deliver to each stockholder that portion of the assets allotted to him or her, and make such indorsements, deeds or other papers as may be necessary to pass title to the same."

5 "This is the resolution of December 21, 1916 under the authority of which the real estate was distributed.

"It was agreed by the stockholders to divide the real estate holdings of the Coca-Cola Company which had been purchased at various times in years past, and which are not necessary to the business of the company, and which are not used by the company in its regular business, this property to be divided by an agreement between the stockholders and deeds to be made by the company in accordance with such agreement."

410

tabulations illustrating the method and showing the result of following out their respective theories. As shown by their tabulations, the theory of appellee and the District Judge was that by their resolutions the directors had made it plain that the cash dividends were to be paid, and they were paid, out of current earnings; the property dividends were to be paid, and were paid, as far as the surplus went, out of accumulated surplus without regard to the years in which the surplus originated. That following this plan all surpluses would be exhausted in the payment of the last property dividend, the deficit left remaining would have to be and was paid out of the 1916 current earnings, and there would remain, as the balance of 1916 earnings, the December 31, 1916, balance in question in this case.

Appellant's tabulation shows his theory to be that the resolutions, the distributions, and the whole course of the dealings of the company, in the light of the principles applicable to dividend declarations and distributions, made it plain that all of the dividends had been intended to be and they were, paid out of earnings in the order of their obtaining; that those most recently received would be used first, then the next most recent, and finally the oldest. Appellant's tabulation follows the method that was used in the Dobbs Case. It is that which was used by the government in taxing all prior distributions the company made. It is that assumed and employed by the government in all proceedings regarding the distribution in question here until the position appellee now takes was taken in this suit. This method gives effect to and satisfies the statute which both appellant and appellee invoke, section 31, subsec. (b), Revenue Act of 1916 (39 Stat. 756), as added by section 1211 of the Revenue Act of 1917 (40 Stat. 338). That section provides:

"But nothing herein shall be construed as taxing any earnings or profits accrued prior to March first, nineteen hundred and thirteen, but such earnings or profits may be distributed in stock dividends or otherwise, exempt from the tax, after the distribution of earnings and profits accrued since March first, nineteen hundred and thirteen, has been made."

We agree with appellant that there is nothing in the property resolutions requiring, directing, or permitting a different method of distribution for the property distributions than that employed in the distribution of cash. We agree with him that during the whole course of the distributions this principle was uniformly followed. In each distribution, first, the earnings and profits accrued since March 1, 1913, and on hand were distributed, and, second, for the excess, the March 1 surplus was resorted to. We agree with appellant that to hold the distribution of the December 31, 1916, balance taxable would be contrary to the provisions of the invoked section, to "tax profits accrued prior to March 1, 1913, distributed after the distribution of profits accrued since, had been made."

We agree with him too, that this is what the judgment he appeals from has done, and that it may not stand.

The judgment is reversed, and the cause is remanded for further proceedings not inconsistent herewith.